In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00022-CV


______________________________




WEST TRINITY PROPERTIES, LTD., Appellant



V.



CHASE MANHATTAN MORTGAGE CORPORATION, Appellee




 


On Appeal from the 191st Judicial District Court


Dallas County, Texas


Trial Court No. 00-08517-J




 




Before Grant, Ross, and Cornelius,* JJ.


Opinion by Justice Cornelius


*William J. Cornelius, C.J., Retired, Sitting by Assignment



O P I N I O N



 This case involves the priority of liens against residential real estate. Chase
Manhattan Mortgage Corporation was awarded summary judgment in the trial court, and
West Trinity Properties, Ltd. appeals. We affirm the judgment.

 The summary judgment evidence is undisputed. On April 25, 1997, Franklin D.
Brooks purchased a house and lot in the Greene Addition of Duncanville and executed and
delivered a purchase money note in the principal sum of $89,264.00 to Sun West Mortgage
Company. Both Franklin Brooks and his wife, Mildred Brooks, signed a deed of trust
securing the note. The note and deed of trust lien securing it were later assigned to
Chase. On January 25, 1999, the Greene Home Owners Association (Greene) obtained
a judgment lien against the Brookses in the amount of $4,051.61 for past dues owed by
the Brookses. In June of 1999, the Brookses stopped making payments to Chase on the
promissory note. In October of 1999, Chase notified the Brookses that the promissory note
was in default. Two weeks later, Mildred Brooks filed for bankruptcy. According to an
affidavit attached to Chase's motion for summary judgment, Chase did not receive notice
of Mildred Brooks' pending bankruptcy. On November 12, 1999, Chase notified the
Brookses by certified mail of a foreclosure sale on the property scheduled for December 7,
1999. On November 30, 1999, the bankruptcy court dismissed Mildred Brooks' bankruptcy
action. James C. Frappier, substitute trustee under Chase's deed of trust, conducted the
scheduled nonjudicial foreclosure sale on December 7, 1999. Chase purchased the
property at the foreclosure sale and recorded its deed on December 13, 1999.

 Three months later, on March 7, 2000, Greene caused the sheriff to conduct a
foreclosure sale of the Brooks property to enforce the lien created by the January 1999
judgment it had obtained against the Brookses. At this sale, West Trinity purchased the
property for $9,000.00 and obtained a sheriff's deed purporting to convey the Brookses'
interest in the property. On August 31, 2000, nine months after Chase's foreclosure sale,
Chase attempted to reopen Mildred Brooks' November 1999 bankruptcy case by filing both
a motion to reinstate for a limited purpose and a motion for relief from stay. The
bankruptcy court dismissed the motions without prejudice and ordered that the validity of
the December 7, 1999, sale be resolved by a state court. On November 17, 2000, without
seeking a state court's determination of the validity of the original foreclosure sale, Chase
and its substitute trustee, Frappier, rescinded and canceled the December 7, 1999,
foreclosure sale. 

 Franklin and Mildred Brooks filed this suit on October 23, 2000, naming West Trinity,
Greene, and Chase as defendants. West Trinity cross-claimed against Chase seeking: 
1) a declaration that West Trinity has title to the property free and clear of any interest
asserted by Chase, 2) removal of the cloud on its title created by Chase's lien, 3) damages
for negligence in Chase's foreclosure sale, and 4) an injunction against Chase's foreclosing
on the property. The trial court granted summary judgment against West Trinity and in
favor of Chase on all grounds, concluding that Chase's lien is superior to West Trinity's
interest in the property. In addition, the court dismissed all the Brookses' claims, granted
West Trinity a money judgment against the Brookses, and rendered a final judgment
incorporating the summary judgment order and held that the foreclosure sale on March 7,
2000, at which West Trinity was the successful buyer, was valid. The effect of the court's
judgment is that West Trinity takes the property subject to Chase's prior lien.

 Summary judgment under Tex. R. Civ. P. 166a provides a method of terminating a
case when it clearly appears that only a question of law is involved and there is no genuine
material fact issue. Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); see
Tex. R. Civ. P. 166a(c). The party moving for summary judgment carries the burden of
establishing that no material fact issue exists and that it is entitled to judgment as a matter
of law. Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d at 223. The nonmovant has the burden
to respond to a summary judgment motion only if the movant conclusively establishes its
cause of action or defense. Id. at 222-23 (citing Oram v. Gen. Am. Oil Co., 513 S.W.2d
533, 534 (Tex. 1974)). The movant must establish its right to summary judgment on the
issues expressly presented to the trial court by conclusively proving all elements of the
movant's cause of action or defense as a matter of law. Id. at 223 (citing Walker v. Harris,
924 S.W.2d 375, 377 (Tex. 1996)).

 Summary judgments must stand on their own merits. See M. D. Anderson Hosp.
& Tumor Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000). When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant. Id.; see Sci. Spectrum,
Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). We indulge every reasonable inference
and resolve any doubt in the nonmovant's favor. Sci. Spectrum, Inc. v. Martinez, 941
S.W.2d at 911. On appeal, the movant still bears the burden of showing there is no
genuine issue of material fact and that it is entitled to judgment as a matter of law. See
M. D. Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d at 23-24.

 In its motion for summary judgment and again on appeal, Chase asserts that, under
any conceivable application of the law, it has a superior lien on the property and, therefore,
West Trinity's cross-claims fail as a matter of law. On appeal, West Trinity challenges this
assertion by raising two different fact issues: 1) whether Chase's December 7, 1999,
foreclosure sale was valid, and 2) whether the rescission of the substitute trustee's sale on
November 17, 2000, was effective. First, we must determine whether the fact issues West
Trinity raises are genuine issues of material fact. If they are not, summary judgment was
proper. 

 The mere existence of a fact question cannot preclude summary judgment; the fact
must be material to the claims for which summary judgment is sought. See Lampasas v.
Spring Ctr., Inc., 988 S.W.2d 428, 433 (Tex. App.-Houston [14th Dist.] 1999, no pet.)
(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only
if it affects the outcome of the suit under the governing law. Id. 

 Here, Chase contends that the fact issues presented by West Trinity are not
genuine issues of material fact. We agree. 

 Chase produced summary judgment evidence showing it possessed a valid first
mortgage lien on the property owned by the Brookses. This lien was secured by a deed
of trust recorded in May 1997. The summary judgment evidence also shows that West
Trinity's interest in the property, if any, derives from its purchase at the March 7, 1999,
sheriff's sale based on the foreclosure of Greene's judgment lien. Without proof to the
contrary, a judgment lien is junior and subject to all equities in existence at the time of the
judgment. See Mercer v. Bludworth, 715 S.W.2d 693, 697 (Tex. App.-Houston [1st Dist.]
1986, writ ref'd n.r.e.), overruled in part on other grounds by Shumway v. Horizon Credit
Corp., 801 S.W.2d 890, 894 (Tex. 1991).

 West Trinity presented no summary judgment evidence to refute Greene's junior lien
status. All that West Trinity offers is an unsupported allegation that the Brookses
purchased the property "subject to The Greene Homeowners Association's lien for
assessments and other approved fees as reflected in the Declaration of Covenants
recorded in the Real Property Records of Dallas County, Texas." West Trinity, however,
did not make the alleged declaration of covenants a part of the summary judgment
evidence, and it is not part of the record before us. Nor is there any summary judgment
evidence supporting the proposition that Chase's original lien was ever subject to any other
liens or interests. Issues not expressly presented to the trial court may not be considered
on appeal as grounds for reversal of a summary judgment. See Carlton v. Trinity Universal
Ins. Co., 32 S.W.3d 454, 458 (Tex. App.-Houston [14th Dist.] 2000, pet. denied); see also
Sabine Offshore Serv., Inc. v. City of Port Arthur, 595 S.W.2d 840, 841 (Tex. 1979). It is
not our prerogative to speculate on the contents of an allegedly pre-existing declaration of
covenants, or even whether one actually exists. Absent evidence to the contrary, Chase
has shown that its lien is superior to Greene's judgment lien as a matter of law.

 Because Chase possessed a superior lien, neither of the fact issues West Trinity
presents in this appeal affects Chase's superior interest in the property. Thus, West Trinity
has not presented a material fact issue. Regardless of whether the December 7, 1999,
foreclosure sale was valid, void, or voidable, and whether the November 2000 rescission
was valid, West Trinity's interest in the property, if any, is still subordinate to that of Chase.

 A valid December 7, 1999, nonjudicial foreclosure sale, as West Trinity urges us to
recognize, would extinguish all junior liens, including Greene's judgment lien. See Houston
Inv. Bankers Corp. v. First City Bank, 640 S.W.2d 660 (Tex. App.-Houston [14th Dist.]
1982, no writ); Farm & Home Sav. & Loan Ass'n v. Muhl, 37 S.W.2d 316 (Tex. Civ.
App.-Waco 1931, writ ref'd). Chase would have title to the land free and clear of any junior
liens or interest. Under this scenario, the sheriff's sale could not have passed good title
to West Trinity at the March 7, 2000, foreclosure sale. West Trinity could have obtained
only what title the Brookses had to convey. See Allied First Nat'l Bank v. Jones, 766
S.W.2d 800 (Tex. App.-Dallas 1988, no writ); see also Tex. Civ. Prac. & Rem. Code Ann.
§ 34.045(a) (Vernon 1997). 

 A voidable sale would have the same effect. In Texas, a voidable foreclosure sale,
unlike a void sale, is treated as valid until it is set aside, and acts to pass the debtor's title
to the purchaser. Diversified, Inc. v. Walker, 702 S.W.2d 717, 721 (Tex. App.-Houston
[1st Dist.] 1985, writ ref'd n.r.e.). The Brookses took no action to set aside the
December 7, 1999, sale. Therefore, as a result of the December 7, 1999, sale, Chase
would have had clear title to the property on March 7, 2000, when the sheriff purported to
sell it under the Greene judgment lien, so the Brookses would have possessed no title to
convey and could not have passed title under the Greene foreclosure to West Trinity. See
Allied First Nat'l Bank v. Jones, 766 S.W.2d at 804. Under a voidable sale scenario,
Chase's interest would still be superior.

 Finally, a void December 7, 1999, sale, as is consistent with the trial court's final
judgment, would result in Chase retaining its first lien on the property. The effect of this
is that all subsequent purchasers would then take title subject to Chase's lien. See Mercer
v. Bludworth, 715 S.W.2d at 697-98. This was the result of the trial court's final judgment.

 Under any theory, West Trinity does not have a superior claim against Chase. 
Therefore, the trial court did not err in granting summary judgment. Having found summary
judgment proper, we do not need to decide the ancillary issues that West Trinity raises
regarding the effect of Mildred Brooks' bankruptcy. 

 For the reasons stated, we affirm the judgment.


 William J. Cornelius*

 Justice


*Chief Justice, Retired, Sitting by Assignment


Date Submitted: July 15, 2002

Date Decided: December 13, 2002


Publish