

# NUMBER 13-21-00466-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

NUECES COUNTY AND
NUECES COUNTY APPRAISAL
DISTRICT,                                                              Appellants,

v.

SAN PATRICIO COUNTY,                                          Appellee.

On appeal from the 135th District Court
of Refugio County, Texas.

# OPINION

Before Justices Benavides, Tijerina, and Peña
Memorandum Opinion by Justice Peña

Appellants Nueces County and the Nueces County Appraisal District (NCAD)

appeal a summary judgment entered in favor of appellee San Patricio County regarding

a boundary dispute. *See* TEX. LOC. GOV'T CODE ANN. § 72.009. The present suit involves the interpretation of an earlier 2003 Judgment setting the boundary line between the two counties. In three issues, Nueces County and NCAD[1] argue that the trial court erred in: (1) concluding that piers, wharfs, docks, and related facilities connected to the shoreline of San Patricio County are in San Patricio County; (2) concluding that certain categories of land within the bays are within San Patricio County; and (3) binding NCAD to the 2003 Judgment when it was not a party to that litigation. We affirm.

## I.  BACKGROUND

### A.  Boundary Dispute

"Counties are creatures of the Legislature." *In re Occidental Chem. Corp.* (*Occidental*), 561 S.W.3d 146, 151 (Tex. 2018) (orig. proceeding) (citing TEX. CONST. art. IX, § 1 ("The Legislature shall have power to create counties for the convenience of the people[.]"), TEX. CONST. OF 1845, art. VII, § 34 ("The legislature shall, at the first session thereof, and may at any subsequent session, establish new counties for the convenience of the inhabitants of such new county or counties[.]")). "The 1846 boundary between San Patricio County and Nueces County was described as 'following the meanders' of Corpus Christi Bay." *Id.* (quoting Act approved April 18, 1846, 1st Leg., R.S., § 1, 1846 Tex. Gen. Laws 86, reprinted in 2 H.P.N. Gammel, The Laws of Texas 1822–1897, at 1392, 1392 (Austin, Gammel Book Co. 1898)). "In 1897, the Legislature authorized counties to sue each other for the purpose of establishing the boundary line between them." *Id.* (cleaned up). That statute currently provides that suit must be brought in the district court of the closest, adjoining county "whose boundaries are not affected by the suit." TEX. LOC. GOV'T

---

[1] For ease of reference, Nueces County and NCAD will be referred to collectively as "Nueces County" throughout this opinion, except when necessary to refer to NCAD solely.

CODE ANN. § 72.009(a). "The district court has jurisdiction to determine where the boundary line is located and may order the line to be re-marked and resurveyed." *Id.* § 72.009(b). "The line established by the district court shall be treated as the true boundary between the counties unless the court determines that the line in question was established under prior law." *Id.*

## B.     The 1972 Suit

The Texas Supreme Court has summarized the initial boundary dispute between the counties as follows:

> In 1972, San Patricio County sued Nueces County in the district court of neighboring Refugio County to determine the boundary between the two counties running along the Nueces River, and the Nueces, Corpus Christi, and Redfish Bays, and to recover taxes which it claimed that Nueces County wrongfully assessed on the San Patricio County side of the boundary. The counties disputed whether statutes then delineating their boundaries set the dividing line in the center of those waterways, as San Patricio County argued, or at the shoreline, as Nueces County argued. The case remained pending for 17 years. Finally, in 1989, the trial court granted summary judgment for Nueces County[, setting the boundary at the shoreline]. The court of appeals reversed because the judgment failed to dispose of San Patricio County's claim that the shoreline had moved or been modified by natural processes, such as erosion, or by human intervention, such as dredging. The court remanded the case for trial of the issue of which county includes [modifications to the shoreline.]

*Occidental*, 561 S.W.3d at 151–52 (cleaned up).

## C.     2003 Judgment Following Remand

Fourteen years later, in 2003, the trial court rendered a final judgment. The court "decreed that the common boundary line between San Patricio and Nueces Counties" runs, in relevant part, "along the northerly shorelines of the Nueces Bay and Corpus Christi Bay" and that "San Patricio County shall lie northerly of that line" and "Nueces County shall lie southerly of that line." The judgment defined "shoreline" as "the point at

3

which the waters of the bays meet the mainland at mean lower low tide." The judgment stated that San Patricio County "shall include the parts of the Donnell and Ingleside Points detached from the mainland by the La Quinta ship channel and the waters of La Quinta ship channel intervening between the detached parts of Donnell and Ingleside Points and the mainland," and "the part of Dagger Island detached from the mainland by the Intercoastal ship channel and the waters of the Intercoastal ship channel intervening between the detached part of Dagger Island and the mainland." On the remanded issue, the judgment declared: "Past and future natural and artificial modifications to the shoreline of San Patricio County shall form a part of San Patricio County." Both counties rely on the following demonstrative evidence in their appellate briefs to depict the detached properties referenced in the judgment:



After the 2003 Judgment became final, Nueces County filed a petition for bill of review alleging that it had not received notice of the judgment. *San Patricio County v.*

4

*Nueces County*, 214 S.W.3d 536, 543 (Tex. App.—Corpus Christi–Edinburg 2006), *judgm't vacated on other grounds*, 246 S.W.3d 651 (Tex. 2008). The trial court set aside the 2003 Judgment, consolidated the boundary suit and the bill of review proceedings, and adopted the 2003 Judgment as its judgment on the merits. *Id.* at 544. On appeal to this Court, we reversed the trial court's judgment granting the bill of review, and we affirmed the 2003 Judgment. *Id.* at 549. Nueces County did not seek further review of the 2003 Judgment's establishment of the boundary line between the two counties. *See Nueces County v. San Patricio County*, 246 S.W.3d 651 (Tex. 2008) (reviewing only the award of damages against Nueces County for taxes improperly levied on San Patricio County properties and holding that Nueces County was immune from such claims).

**D.    2009 Suit**

In 2009, San Patricio County filed a new § 72.009 suit in Refugio County district court to enjoin Nueces County from taxing certain properties that extend into the water of the Nueces County bays. San Patricio County claimed the properties were on its side of the boundary pursuant to the 2003 Judgment. San Patricio also sought a declaration that certain lands in the bays were a part of San Patricio County.

Nueces County filed a cross-petition seeking a declaration that the 2003 Judgment awarded the entirety of the bays to Nueces County, including piers, docks, and wharfs. On Nueces County's motion, venue was transferred to Nueces County, where the case sat inactive for years. In 2014, the Nueces County district court granted summary judgment for Nueces County, dismissing all of San Patricio County's claims. However, this Court reversed, concluding that under § 72.009, the case should be heard in Refugio County. *San Patricio County v. Nueces County*, 492 S.W.3d 476, 488 (Tex. App.—Corpus

5

Christi 2016, pet. denied). We remanded the case with instructions that the trial court vacate and set aside its judgment and transfer the case to the 135th District Court of Refugio County, Texas. *Id.*

**E.      Tax Protest Suits**

In the meantime, the Texas Supreme Court heard two cases pursuant to § 72.010 of the local government code, which affords that court original jurisdiction to determine which county is owed taxes on the petition of a property owner that is subject to multiple taxation. *See In re Corpus Christi Liquefaction, LLC* (*CCL*), 588 S.W.3d 275 (Tex. 2019); *Occidental*, 561 S.W.3d 146.

In *Occidental*, relators, which the court collectively referred to as Oxy, "own[ed] two massive commercial piers extending from the mainland of San Patricio County into the waters of Corpus Christi Bay that lie in Nueces County." 561 S.W.3d. at 150. The court held that "[t]he common law . . . supports treating docks, piers, and similar permanent facilities that are connected to the mainland of San Patricio County as a part of that county" and that the "taxes owed by Oxy on its Piers [were] due [to] San Patricio County, not Nueces County." *Id.* at 165. The court "direct[ed] the Nueces County Appraisal District to withdraw and cease from issuing tax assessments to Oxy for its Piers and other facilities which [it] held to be part of San Patricio County." *Id.*

The Texas Supreme Court heard another case pursuant to § 72.010 in *CCL,* 588 S.W.3d at 275. CCL petitioned the court for the same relief that was previously granted to Oxy, contending that the operative facts were the same. *Id.* at 276. The court observed:

> The material facts are undisputed. In 2015, CCL began construction of a massive natural gas liquefaction and export facility on the northern shore of Corpus Christi Bay. The first phase of the project has been completed; a second phase remains under construction. The facility is built on land in San

Patricio County, with docks stretching out into the La Quinta Channel of the Bay, which is in Nueces County.

*Id.* CCL asserted that it was being taxed in both Nueces County and San Patricio County on the same property, just as Oxy was. *Id.* at 277. After CCL filed its petition, Nueces County decided to refrain from taxing the facility and explained that some taxing entities would be issuing refunds for taxes paid in tax years 2018 and 2019. *Id.* As a result, Nueces County argued that "by zeroing out the 2018 and 2019 appraisal values for CCL's facility, the Appraisal District has mooted the case." *Id.* Nueces County also argued that "CCL's massive plant and docks are so different from Oxy's piers that *Occidental's* rationale and ruling do not apply." *Id.*

In assessing whether it had jurisdiction to decide the matter, the court noted the following:

> [T]he parties' disputes over the nature of CCL's facility in relation to the counties' boundary are significant and require resolution. While *Occidental* concluded that the common law treats docks, piers, and similar permanent facilities built both on the mainland and the submerged land as being part of the mainland, we did not hold that the rule applies to every such structure imaginable. On the contrary, we derived the rule from cases that involved structures similar to Oxy's piers. The Nueces Parties argue that CCL's facility is different in ways inconsistent with the rationale for the common law rule. CCL insists that there is no meaningful difference. That is, in part, a factual dispute. So is the nature of the services Nueces County will be obliged to provide CCL.

*Id.* at 278–79 (cleaned up). In reviewing whether there was a strong and special reason—or an urgent necessity—for it to exercise original jurisdiction, the court distinguished *Occidental* as follows: "In the present proceeding, however, CCL has complained of double taxation for only three years, has paid little under protest, may have some of that refunded, and is not currently being assessed." *Id.* at 279. Ultimately, the court

7

determined "in the circumstances before us, we conclude that the Constitution does not permit us to exercise the jurisdiction conferred by [§] 72.010 at this time." *Id.*

## F.    Summary Judgment

At the time the Texas Supreme Court issued the *Occidental* and *CCL* opinions, the trial court was considering competing motions for summary judgment in the 2009 suit. In its motion, San Patricio County argued that, as a matter of law, the following disputed lands are part of San Patricio County:

1.    Lands that have been raised above the mean lower low tide line by the deposit of dredge spoil or other materials ("Raised Lands");

2.    Piers, wharfs, docks, and similar permanent facilities that are connected to the mainland of San Patricio County and that are suspended on pilings above the mean lower low tide line ("Piers and Wharfs");

3.    Submerged lands that are located in "the waters of La Quinta ship channel intervening between the detached portions of Donnell and Ingleside Points and the mainland" ("Intervening Submerged Lands"); and

4.    Lands that were formerly connected to the mainland and above the mean lower low tide line, but that have become submerged, or detached from the mainland, because of the dredging of navigation channels or the removal of soil for the construction of ports, docks, piers or similar facilities ("Detached or Submerged Parts of the Mainland").

San Patricio County argued that the properties are "a part of the mainland of San Patricio County and not a part of the waters of the bays." It argued that artificial modifications of the shoreline include the raising of submerged lands and the construction of piers, wharfs, docks, and similar facilities. San Patricio reasoned that "[a]s a practical matter, only [it] can provide any meaningful governmental services to the docks, piers, and other facilities constructed along its shoreline." San Patricio County attached evidence establishing that

8

it provides a variety of public services to the disputed properties that Nueces County does not.

In its motion, Nueces County argued that the disputed properties were located within Nueces County. It attached several exhibits to its motion, including affidavit testimony that Nueces County provides law enforcement, fire prevention, and emergency medical services by boat to the bays. It also produced evidence that Nueces County funded the development of the disputed property through bond initiatives. Nueces County argued that all piers, wharfs, and docks are located in Nueces County. It maintained in the alternative that certain structures should be treated differently than the Oxy piers because they are massive structures with concrete poured into the bay. Nueces County posited that these structures are more akin to the artificial fill that Texas courts have ruled cannot change a boundary.

After a hearing, the trial court signed an order granting San Patricio County's motion for summary judgment and denying Nueces County's motion for summary judgment. It later rendered a final judgment providing that:

a) Nueces County and [NCAD] are bound by the terms of this Court's April 11, 2003 Judgment and that judgment is valid and remains in full force and effect.

b) The following categories of property are a part of San Patricio County:

1) Formerly submerged lands that have been raised above the mean lower low tide line by the deposit of dredge spoil or other materials and that are connected to the San Patricio County shoreline.

2) Piers, wharfs, docks, and similar permanent facilities that are connected to the mainland of San Patricio County and that are suspended on pilings above the mean lower low tide line.

9

3) Lands that were formerly a part of Donnell and Ingleside Points but that were submerged by the dredging of the La Quinta Channel and are now within "the waters of La Quinta ship channel intervening between the detached portions of Donnell and Ingleside Points and the mainland."

4) Lands that were formerly connected to the San Patricio County mainland and the surface of which was above the mean lower low tide line, but that have become submerged, or detached from the mainland of San Patricio County, because of the dredging of navigation channels or the construction of port or docking facilities.

c) The Alpha and Beta piers formerly owned by Occidental Petroleum Company and its subsidiaries, and any similar structure built out from the San Patricio shoreline are not taxable by Nueces County.

d) All of the land that is connected to the detached portion of Ingleside Point and that is above the mean lower low tide line is in San Patricio County.

The judgment enjoined Nueces County and NCAD from taxing the identified properties. The trial court did not award attorney's fees to any party. Nueces County's motion to modify the judgment, or alternatively, for new trial was overruled by operation of law. This appeal followed.

## II. STANDARD OF REVIEW & APPLICABLE LAW

"We review a trial court's summary judgment de novo." *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019). We consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the movant. *Id*. A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c*); Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). Evidence is conclusive

10

only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

"If a movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment." *Bryant v. Baker*, 580 S.W.3d 408, 412 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)). The nonmovant can meet its burden if its evidence is more than a scintilla; i.e., it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). When both parties move for summary judgment and the trial court grants one motion and denies the other, we determine all issues presented and render the judgment that the trial court should have rendered. *Colorado County v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017) (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)). "However, if resolution of the issues rests on disputed facts, summary judgment is inappropriate, and the reviewing court should reverse and remand for further proceedings." *Rancho Viejo Cattle Co., Ltd. v. ANB Cattle Co.*, 642 S.W.3d 850, 870 (Tex. App.—San Antonio 2021, pet. denied) (quoting *Gramercy Ins. Co. v. MRD Invs., Inc.*, 47 S.W.3d 721, 724 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)).

"A county may bring suit against an adjacent county to establish the common boundary line." TEX. LOC. GOV'T CODE ANN. § 72.009(a). "The court shall try the suit in the same manner in which it tries other suits." *Id.* "The district court has jurisdiction to

11

determine where the boundary line is located and may order the line to be re-marked and resurveyed." *Id.* § 72.009(b). "The line established by the district court shall be treated as the true boundary between the counties unless the court determines that the line in question was established under prior law." *Id.* "If the district court determines that the boundary line has been established under prior law, the court shall declare that line to be the true boundary between the counties and shall have that line resurveyed and established as the boundary." *Id.*

"[T]he powers conferred on the district court are very general regarding the establishment of a common boundary line." *San Patricio County*, 492 S.W.3d at 485. We have previously held that the statutory grant of authority "to determine where the boundary line is located necessarily embraces the power of that court to determine all necessary and incidental matters including what property is located within each county along that boundary line should such a question arise at a later date." *Id.*

"Courts construe orders and judgments under the same rules of interpretation as those applied to other written instruments." *In re Estate of Renz*, 662 S.W.3d 531, 537 n.4 (Tex. App.—El Paso 2022, pet. denied) (quoting *Azbill v. Dall. Cnty. Child Protective Servs. Unit of Tex. Dep't of Hum. & Regul. Servs.*, 860 S.W.2d 133, 136 (Tex. App.—Dallas 1993, no writ)). "Judgments should be construed as a whole to harmonize and give effect to the entire [judgment]." *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003) (citing *Constance v. Constance*, 544 S.W.2d 659, 660 (Tex. 1976)). In interpreting a judgment, our goal is "to determine not what the trial court should have done but, if possible, what the court actually did." *Hampton v. Equity Tr. Co.*, 607 S.W.3d 1, 6 (Tex. App.—Austin 2020, pet. denied) (quoting *Shanks*, 110 S.W.3d at 447). We begin with the

12

"text of the judgment as written and, if it is unambiguous, we must give effect to the literal language used." *In re Piatt Servs., Inc.*, 493 S.W.3d 276, 281 (Tex. App.—Austin 2016, orig. proceeding). For undefined terms, we must give the term its common and ordinary meaning, and we may resort to dictionary definitions. *Anadarko Petrol. Corp. v. Hous. Cas. Co.,* 573 S.W.3d 187, 192 (Tex. 2019).

## III.    DISCUSSION

### A.    Piers, Docks, Wharfs, and Similar Facilities

In its first issue, Nueces County argues that the trial court erred in concluding that piers, docks, and similar facilities in the bays are a part of San Patricio County. Nueces County maintains that such facilities do not constitute artificial modifications to the shoreline of San Patricio County. Nueces County further argues that it provides services to the structures in the bays and invested in the development of certain structures. Nueces County urges in the alternative that this Court should conclude that structures similar to the piers identified in *Occidental* are in San Patricio County, while all other structures are subject to taxation in Nueces County. San Patricio County responds that this issue was decided against Nueces County in *Occidental* and that decision is final, binding, and not subject to further review. San Patricio County maintains that it is impractical for Nueces County to provide any meaningful public services to the disputed property.

As recognized by the Texas Supreme Court in *Occidental*, "docks, piers, and similar permanent facilities that are connected to the mainland of San Patricio County [are] a part of that county." 561 S.W.3d at 165. In other words, such facilities, even though not an alteration of the shoreline, are considered part of the mainland to which they are connected. *See id.* The court explained "that piers, docks, and related facilities cannot

13

fairly be said to alter a shoreline as dredging does[, and] . . . that private persons cannot alter county boundaries merely by constructing improvements across them." *Id.* at 162. However, the court reasoned that:

> Taxation is justified by the assumption that the government will render services of equivalent value in protecting one's person and property, in adding to the value of one's property, and in creating and maintaining public conveniences in which one shares, like roads, bridges, sidewalks, pavements, and schools for the education of children. Nueces County cannot practically render services such as fire and police protection to Oxy's Piers, while San Patricio County can easily access the Piers from the land.

*Id.* at 163. The court observed that "Nueces County can do little, if anything, to improve the value of Oxy's Piers, and nothing to provide public conveniences." *Id.* The court fully adopted the following analysis by the Maryland Court of Appeals in determining the effect of piers on the boundary between the City of Baltimore and the County of Baltimore:

> It would seem, therefore, to be perfectly clear that the Legislature never intended that such improvements as these should, for the purposes of taxation, be cut in two at the point of high-water mark on the bank of the river when they were made, and part be taxed by the city and the rest by the county. Without the right to use the land, which is in Baltimore city, the improvements would be useless, and, as they are incident to that land and dependent upon it for their existence, it would be an anomalous condition of affairs if they were to be thus divided. They are so situated as to be dependent upon the city for police and fire protection, and if the appellant's theory be correct they would practically have neither, as this water is separated from Baltimore county and it would be impossible to furnish the appellant with proper fire or police protection on these piers, unless the county made special provision for them, which would practically be impossible without the assistance of the city.

*Id.* at 164 (quoting *W. Md. Tidewater R.R. Co. v. City of Baltimore*, 68 A. 6, 10 (Md. 1907)). The court observed that "[t]he common law thus firmly recognizes that the right to construct docks, piers, and similar facilities from the shore into the water springs from the ownership of the upland property bordering the shore, rather than from the submerged lands on which portions of those facilities are constructed." *Id.* at 165. Thus, the court

14

"direct[ed] the Nueces County Appraisal District to withdraw and cease from issuing tax assessments to Oxy for its Piers and other facilities which [it] held to be part of San Patricio County." *Id.*

*CCL* did not retreat from this holding but recognized that there may be fact issues as to the nature of the structures at issue as well as the services provided by the respective counties to those structures. 588 S.W.3d at 278–79. The court thus declined to exercise jurisdiction under the unique statutory scheme at issue. *Id.* at 279.

Under the doctrine of vertical *stare decisis*, we must follow the precedent of the Texas Supreme Court. *Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022); *see Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) ("The court of appeals in this case followed established law. It is not the function of a court of appeals to abrogate or modify established precedent. That function lies solely with this Court.") (internal citation omitted). This Court has recently recognized the binding nature of *Occidental* in resolving a boundary dispute among municipalities:

> This dispute is analogous to the dispute in [*Occidental*]. Here, the undisputed evidence shows that the structures located on the water are connected to the mainland located in Ingleside. Some are the very same structures that were the subject of the [*Occidental*] dispute. Therefore, for the reasons stated in [*Occidental*], we similarly conclude that the piers, docks, bulkheads, wharves, and similar facilities and structures that are constructed and attached to the [main]land are part of Ingleside's jurisdiction as a matter of law.

*City of Corpus Christi v. City of Ingleside*, No. 13-20-00513-CV, 2022 WL 2163878, at *3 (Tex. App.—Corpus Christi–Edinburg June 16, 2022, pet. denied) (mem. op) (cleaned up). Further, we conclude that evidence that Nueces County provides boat services to the waters of the bay does not alter the common law justification for the taxation of piers

and similar facilities.[2] *See Occidental*, 561 S.W.3d at 163 ("Nueces County cannot practically render services such as fire and police protection to Oxy's Piers, while San Patricio County can easily access the Piers from the land.").

For the foregoing reasons, we hold that the trial court did not err in concluding that the following property is located in San Patricio County: "Piers, wharfs, docks, and similar permanent facilities that are connected to the mainland of San Patricio County and that are suspended on pilings above the mean lower low tide line." *See City of Rowlett*, 593 S.W.3d at 181.

Nueces County argues in the alternative that we should conclude that only piers similar to the piers described in *Occidental* are subject to taxation by San Patricio County. Nueces County maintains that "massive structures with concrete poured into the Bays . . . place a great burden on the Nueces County Bays." In support of its argument, Nueces County references the *CCL* opinion, but it cites no summary judgment evidence demonstrating that a particular facility fails to meet the criteria set forth in the underlying judgment.[3] Accordingly, we conclude that Nueces County failed to create a genuine issue of material fact as to whether any specific facility attached to the mainland of San Patricio County was so dissimilar to the facilities in *Occidental* that it should be considered a part

---

[2] Nueces County also provided evidence demonstrating that separate governmental entities, located at least partially within San Patricio County, provide services to the facilities in question. We conclude that this evidence is immaterial to whether Nueces County maintains authority to tax the facilities. *See Janaki v. C.H. Wilkinson Physician Network*, 624 S.W.3d 623, 628 (Tex. App.—Corpus Christi–Edinburg 2021, no pet.) ("A fact is 'material' only if it affects the outcome of the suit under the governing law." (quoting *W. Trinity Props., Ltd. v. Manhattan Mortg. Corp.*, 92 S.W.3d 866, 869 (Tex. App.—Texarkana 2002, no pet.))).

[3] In its brief, Nueces County cites to a summary judgment exhibit which appears to contain aerial photographs of certain structures in the bay. We have reviewed this exhibit and the entirety of the summary judgment record, and we can find no corresponding evidence establishing what these photographs depict or demonstrating that the facilities constitute structures that are properly classified as being in Nueces County.

16

of Nueces County. *See Rancho Viejo Cattle*, 642 S.W.3d at 870. We overrule Nueces County's first issue.

**B.    Lands Within the Bays**

In its second issue, Nueces County argues that the trial court incorrectly concluded that certain categories of land in the bays are within and taxable by San Patricio County because they do not constitute natural or artificial modifications to the shoreline as provided for by the 2003 Judgment. Specifically, Nueces County maintains that the following types of land were miscategorized: (1) formerly submerged lands that have been raised by the deposit of dredge connected to the mainland and the detached portion of Ingleside Point; and (2) lands formerly connected to San Patricio County that have become submerged or detached due to dredging.

**1.    Raised Lands Connected to San Patricio County Mainland and the Detached Portion of Ingleside Point**

Nueces County argues that formerly submerged lands raised above the mean lower tide line by the deposit of dredge spoil or other materials and connected to San Patricio County's shoreline are in Nueces County. Nueces County maintains that the creation of land by artificial fill does not alter a political boundary line. It argues that the land connected to the detached portion of Ingleside Point that has been raised above the mean lower tide line are in Nueces County for the same reason. Nueces County further maintains that the expansion of Ingleside Point is in the intervening waters and therefore the fill cannot be considered a modification of the shoreline. San Patricio County responds that the 2003 Judgment, which is final and unappealable, declares such lands to be a part of San Patricio County as a future artificial modification of the shoreline. It further maintains that the detached portion of Ingleside Point constitutes the shoreline of San

Patricio County and that artificial modifications to that shoreline are part of San Patricio County pursuant to the 2003 Judgment.

The trial court in the prior litigation was empowered by statute to "determine where the boundary line is located." TEX. LOC. GOV'T CODE ANN. § 72.009(a). In making this determination, it concluded that the "common boundary line between San Patricio and Nueces Counties" runs "along the northerly shorelines of the Nueces Bay and Corpus Christi Bay" and that "San Patricio County shall lie northerly of that line" and "Nueces County shall lie southerly of that line." The 2003 Judgment stated that San Patricio County "shall include the parts of the Donnell and Ingleside Points detached from the mainland by the La Quinta ship channel and the waters of La Quinta ship channel intervening between the detached parts of Donnell and Ingleside Points and the mainland." It further stated that "[f]ormerly submerged lands that have been raised above the mean lower low tide line by the deposit of dredge spoil or other materials and that are connected to the San Patricio County shoreline" are part of San Patricio County.

The 2003 Judgment defines the shoreline as "the point at which the waters of the bays meet the mainland at mean lower low tide" and that "[p]ast and future natural and artificial modifications to the shoreline of San Patricio County shall form a part of San Patricio County." "Natural" means "existing in nature; not made or caused by humans." *Natural*, OXFORD ADVANCED AMERICAN ONLINE DICTIONARY, https://www. oxfordlearnersdictionaries.com/us/definition/american_english/natural_1 (last visited December 4, 2023). Contrariwise, "artificial" means "created by people; not happening naturally." *Artificial*, OXFORD ADVANCED AMERICAN ONLINE DICTIONARY,

18

https://www.oxfordlearnersdictionaries.com/us/definition/english/artificial?q=artificial (last visited December 4, 2023).

Interpreting the judgment as a whole to harmonize and give effect to its provisions, *see Shanks*, 110 S.W.3d at 447, we construe the definition of "shoreline" in the 2003 Judgment to apply to the mainland of San Patricio County as well as the detached lands awarded in the 2003 Judgment. We further construe the judgment as providing that any modification to that shoreline whether created by people, or occurring as a result of nature, shall form a part of San Patricio County. Accordingly, we conclude as a matter of law that the trial court did not err in determining that those lands raised above the mean lower tide line that are connected to the mainland and the detached portion of Ingleside Point are a part of San Patricio County. *See City of Rowlett*, 593 S.W.3d at 181.

We do not address Nueces County's argument that the creation of land by artificial fill does not alter a political boundary line according to common law principles[4] because the argument is an impermissible collateral attack on the 2003 Judgment, which clearly states that artificial modifications to the shoreline shall form a part of San Patricio County. Collateral attacks on final judgments are generally impermissible insofar as they run counter to Texas courts' strong policy of finality and constitute an attempt to bypass the appellate process. *In re D.S.*, 602 S.W.3d 504, 512 (Tex. 2020). The 2003 Judgment, even if erroneous, is not subject to collateral attack. *See Shanks*, 110 S.W.3d at 449

---

[4] The common law focuses on whether a change to a shoreline is gradual or sudden in determining whether a boundary changes. *See New Jersey v. New York*, 523 U.S. 767, 784 (1998) (explaining that "a sudden shoreline change known as avulsion (as distinct from accretion, or gradual change in configuration) has no effect on boundary") (cleaned up); *Brainard v. State*, 12 S.W.3d 6, 17 (Tex. 1999) ("Texas follows the general rule that when the location of the margin or bed of a body of water that constitutes the boundary of a tract of land is gradually and imperceptibly changed or shifted by accretion, reliction, or erosion, the margin or bed of the body of water, as so changed, remains the boundary line of the tract, which is extended or restricted accordingly.").

(explaining that the "remedy for a substantive error of law by the trial court [is] by direct appeal" and not a collateral attack on the judgment).

## 2.     Detached or Submerged Parts of the Mainland

Nueces County argues that lands that were formerly connected to the San Patricio County mainland that have become submerged or detached by dredging are in Nueces County because they are disconnected from the shoreline. San Patricio County responds that the 2003 Judgment declares that the detached parts of certain areas are a part of San Patricio County. It contends that the land that has since become detached or submerged by dredging or excavation remain part of San Patricio County. This includes lands that were formerly part of Donnell and Ingleside Points, which the 2003 Judgment declares to be a part of San Patricio County, but that have become submerged after the La Quinta ship channel was created and are now within the waters of the channel between the detached portions of Donnell and Ingleside Points and the mainland.

The 2003 Judgment states that San Patricio County "shall include the parts of the Donnell and Ingleside Points detached from the mainland by the La Quinta ship channel and the waters of La Quinta ship channel intervening between the detached parts of Donnell and Ingleside Points and the mainland," and "the part of Dagger island detached from the mainland by the Intercoastal ship channel and the waters of the Intercoastal ship channel intervening between the detached part of Dagger Island and the mainland." This language unambiguously awards the detached land caused by dredging, including the intervening submerged lands, to San Patricio County. We construe the 2003 Judgment's award of detached and submerged land as fixing the county boundary line such that future detached and submerged lands that were previously determined to be a part of San

20

Patricio County would remain in San Patricio County. *See Shanks*, 110 S.W.3d at 447. A contrary interpretation would result in ongoing uncertainty as to the true boundary line, which is inconsistent with the intent of the 2003 Judgment when viewed in its entirety. Therefore, we conclude that the trial court did not err in determining that these lands are a part of San Patricio County. *See City of Rowlett*, 593 S.W.3d at 181.

### 3. Summary

Having rejected each of Nueces County's arguments, we overrule its second issue.

## C. NCAD Bound by 2003 Judgment

In its third issue, Nueces County argues that the trial court erred in binding NCAD to the 2003 Judgment because it was not a party to that case.

Nueces County appears to take issue with the following declaration of the trial court: "Nueces County and the Nueces County Appraisal District are bound by the terms of this Court's April 11, 2003 Judgment and that judgment is valid and remains in full force and effect." We observe that in a boundary dispute between counties, "[t]he line established by the district court shall be treated as the true boundary between the counties." TEX. LOC. GOV'T CODE ANN. § 72.009(b). The Texas Tax Code further provides that "[t]he appraisal district boundaries are the same as the county's boundaries." TEX. TAX CODE ANN. § 6.02. Because NCAD's boundary is statutorily fixed to the boundary of Nueces County, we conclude that the trial court did not err in determining that NCAD is bound by the 2003 Judgment's establishment of the boundary line. *See City of Rowlett*, 593 S.W.3d at 181.We overrule Nueces County's third issue.

## IV.    Conclusion

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
28th day of December, 2023.