Caroline **BERTHELOT**, individually and as Trustee of the Caroline Beth Berthelot Living Trust, Appellants,

v.

**J. Baxter BRINKMANN, Appellee.**

No. 05–09–00216–CV.

Court of Appeals of Texas, Dallas.

Aug. 17, 2010.

therefore, we interpret Appellants' pleadings as a statutory bill-of-review challenge only.

W.D. Masterson, Theodore Anderson, Kilgore & Kilgore, Inc., Dallas, TX, for Appellants.

Michael G. Brown, Figari Davenport, L.L.P., Dallas, for Appellee.

Before Justices MOSELEY, FITZGERALD, and FILLMORE.

## OPINION

Opinion By Justice MOSELEY.

J. Baxter Brinkmann sued Caroline Berthelot, individually and as trustee of the Caroline Beth Berthelot Living Trust requesting the trial court to declare his ownership of a "net cash gain" interest in a gasoline production plant and his entitlement to certain funds payable pursuant to that interest. The trial court granted summary judgment in Baxter's favor, declaring he had "full ownership" of the interest and was entitled to certain suspended funds, to the exclusion of Berthelot, and ordering that Baxter recover from Berthelot certain funds mistakenly paid to her.

Berthelot appeals the trial court's judgment. For the reasons set forth below, we resolve Berthelot's issues against her and affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Although the facts regarding their claims are undisputed, the parties vigorously dispute the legal effects of those facts. The net cash gain interest originated in 1950, when J.R. Butler assigned to Scurry Natural Gasoline Corporation a casinghead gas purchase contract and his interests in certain oil and gas leases and in the Scurry Gasoline Plant and gathering system. The leases and the gasoline plant were located in Scurry County, Texas. The assignment reserved to Butler an undivided twenty-five percent interest in the "net cash gain of Scurry Natural Gasoline Corporation," which the assignment defined as:

the total proceeds which accrue to said corporation, its successors and assigns, as assignee of the rights of said J.R. Butler under said gas purchase contract with Pan American Production Company and from the sale of any plant products and gas and residue gas incident thereto or marketed thereunder and any proceeds and returns derived from [Butler]'s ownership of an interest in the Snyder Gasoline Plant, plus the proceeds, if any, derived from the sale of salvage material and/or other equipment retired from the Snyder Gasoline Plant, less and deducted therefrom in computing said net cash gain the sum of the following: [specific costs, operations expenses, and other deductions]. . . .

Also in 1950, Butler assigned an undivided fifteen percent interest in the net cash gain interest described above to R.R. Brinkmann, Sr., Baxter's father. These assignments were filed of record in Scurry County.

By 1962, Brinkmann, Sr.'s fifteen percent interest in the net cash gain interest described above was owned one-half by Baxter and one-half by his mother, Virginia. This lawsuit and appeal concern only the subsequent history of Virginia's one-half interest in Brinkmann, Sr.'s interest. (For purposes of clarity, we will refer to

that interest as the "Snyder Net Profits Interest.")

To resolve litigation between them pending in Louisiana, in 1987, Baxter and Virginia signed a settlement agreement (the 1987 Settlement Agreement). According to the terms of the 1987 Settlement Agreement, Virginia conveyed the Snyder Net Profits Interest to Baxter, subject to a life estate reserved to herself. The 1987 Settlement Agreement was not filed of record in Texas. The legal effect of this agreement is the principal issue in this case.

In 1993, a judgment was obtained against Virginia by appellant Caroline Berthelot. To satisfy the judgment, a sheriff's sale was held in 1994. The bill of sale states the sheriff sold to Berthelot "all the right, title and interest which the said Virginia Brinkmann held on the 1st day of February A.D. 1984 ..." to the Snyder Net Profits Interest. Thereafter, WTG Gas Processing, L.P., which had acquired the Snyder Gasoline Plant, began paying Berthelot the income it formerly paid to Virginia based on the Snyder Net Profits Interest.

Virginia died on August 13, 2006. In January 2007, WTG was notified of Virginia's death and of Baxter's claim that, as Virginia's life estate had terminated, Baxter was entitled to any payments made or to be made after her death based on the Snyder Net Profits Interest. WTG notified Berthelot that payments to her relating to that interest would be suspended.

Baxter then sued Berthelot seeking the court's declaration that: (1) Baxter's remainder interest in the Snyder Net Profits Interest "ripened into full ownership" on Virginia's death, to Berthelot's exclusion; (2) Berthelot had no right to ownership of the Snyder Net Profits Interest or the proceeds to be paid pursuant to it on or after Virginia's death; and (3) the suspended funds and all past and future distributions from the Snyder Net Profits Interest that accrued on or after Virginia's death were payable to Baxter, not Berthelot. Baxter also sought his costs, interest, and attorney's and expert fees from Berthelot.

Berthelot answered, specially excepting and generally denying Baxter's allegations. She also asserted the defenses of estoppel, fraud, and laches, all based on the fact that Baxter did not record the 1987 Settlement Agreement in Scurry County and "concealed such agreement" from the date of its execution until January 2007. She also contended that Baxter's interest was void for two reasons: (1) because the 1987 Settlement Agreement should have been—but was not—recorded in the real property records of Scurry County pursuant to section 13.001 of the Texas Property Code; and (2) because Baxter claimed a usufruct—an estate in property that existed in Louisiana but that was not recognized in Texas. She asserted the following counterclaims: fraud; fraudulent transfer; quiet title; economic coercion and duress; and entitlement to sums paid after Virginia's death which accrued with respect to time periods before her death.

Baxter filed a motion for summary judgment on both traditional and no-evidence grounds and supported by evidence. Berthelot responded, arguing in part that she raised material fact issues on her defenses, precluding summary judgment for Baxter on his claims. Baxter filed a reply. The trial court granted Baxter's motion, declaring his right to the Snyder Net Profits Interest as the remainderman of Virginia's interest and his right to the suspended funds. In addition, the trial court ordered that Baxter recover from Berthelot $25,417.71 that WTG had paid to her after Virginia's death through February 2007. Baxter was awarded attorney's fees, pre- and postjudgment interest, and costs. The

trial court also dismissed Berthelot's counterclaims with prejudice.[1]

On appeal, Berthelot raises two issues: (1) the trial court improperly rendered summary judgment declaring title to the Snyder Net Profits Interest to be vested in Baxter; and (2) under "the doctrine of delayed income," Berthelot is entitled to certain suspended funds and monies paid to her based on the Snyder Net Profits Interest before Baxter's January 2007 notice.

## II. DECLARATORY JUDGMENT

### A. Applicable Law

The Texas Declaratory Judgment Act is a remedial statute that affords relief from uncertainty and insecurity with respects to rights, status, and other legal relations. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.002(b) (Vernon 2008); *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995). Generally, the burden of proof in a declaratory judgment action is on "the party who, on the pleadings, asserts the affirmative claim, and who in the absence of evidence will be defeated, and is not controlled by the position of the parties on the docket as plaintiff or defendant in the declaratory action." *Harkins v. Crews*, 907 S.W.2d 51, 58 (Tex.App.-San Antonio 1995, writ denied) (internal quotations and citations omitted).

### B. Standard of Review

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). When a plaintiff

moves for summary judgment on his own cause of action, he must present competent summary judgment evidence proving each element of his cause of action as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986) (per curiam). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court evidence of any issues precluding summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979). If the defendant asserts a counterclaim, the trial court can grant a final summary judgment for the plaintiff only if the plaintiff disproves at least one of the elements of the defendant's counterclaim in addition to proving conclusively every element of his own cause of action. *See Schafer v. Fed. Servs. Corp.*, 875 S.W.2d 455, 456 (Tex.App.-Houston [1st Dist.] 1994, no writ); *Adams v. Tri–Cont'l Leasing Corp.*, 713 S.W.2d 152, 153 (Tex.App.-Dallas 1986, no writ).

A no-evidence summary judgment is essentially a pretrial directed verdict, which we review under a legal-sufficiency standard. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex.2003). When a party moves for a no-evidence summary judgment under rule 166a(i), he must assert that, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i); *see Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex.2004). A no-evidence summary judgment is improper if the nonmovant brings forth more than a scintilla of probative evidence to

---

1. Although Berthelot filed a motion for summary judgment, nothing in the record shows the motion was ruled on by the trial court.

raise a genuine issue of material fact. Tex.R. Civ. P. 166a(i).

In both traditional and no-evidence summary judgment motions, we review the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex.2006) (per curiam) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex.2005)); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999).

We must affirm the summary judgment if any one of the movant's theories has merit. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex.2005). Further, we will affirm the summary judgment as to a particular claim if an appellant does not present argument challenging all grounds on which the summary judgment could have been granted. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970). A general point of error that the trial court erred in granting the motion for summary judgment allows the party to challenge all of the grounds on which summary judgment could have been decided. *See id.*

## C. Ownership of the Disputed Snyder Net Profits Interest

Baxter moved for traditional summary judgment on his claim for declaratory judgment on the title issue on grounds that the evidence showed conclusively that the Snyder Net Profits Interest was a personal property contract right to be paid a certain portion of net profits from the operations of a gasoline plant, not an interest in real estate; and that Baxter's remainder interest in the Snyder Net Profits Interest "ripened into full ownership" on August 13, 2006, when the life estate holder (Virginia) died. He argued further that the 1994 sheriff's sale of Virginia's life

estate interest did not affect his remainder interest because: (1) by statute the sheriff could only deliver the interest Virginia had in the property sold as of the date of sale (that is, a life estate), and (2) the terms of the sheriff's bill of sale transferred to Berthelot "all the right, title and interest" Virginia held on February 1, 1994, to the Snyder Net Profits Interest.

Berthelot argues the Snyder Net Profits Interest is a real property interest as a matter of law subject to the recording statutes, the 1987 Settlement Agreement failed to convey a remainder interest to Baxter, and there are material questions of fact on her defenses barring summary judgment for Baxter on his claims.

## 1. Snyder Net Profits Interest: Personal or Real Property Interest

Relying on the 1950 Butler assignment's definition of the net cash gain interest (the interest from which the Snyder Net Profits Interest was derived), Baxter argued the Snyder Net Profits Interest was a contract right to be paid a certain portion of net profits of the Snyder Gasoline Plant. He also relied on the deposition testimony of Rick Watkins, who supervised WTG's contracts payments. Watkins testified that the net cash gain interest was a payment made to those owners of a share in the profits of the Snyder Gasoline Plant after calculating gross income minus the expenses of operating the plant. He testified it was not a mineral interest, did not show depletion, and was not an ownership in land or in any fixtures to land, specifically the plant.

Baxter argued that the above evidence proved that the Snyder Net Profits Interest was a contract for profits and thus a personal property interest pursuant to *San Antonio Area Foundation v. Lang*, 35 S.W.3d 636 (Tex.2000). In *Lang*, the Texas Supreme Court considered whether real

estate lien notes, promissory notes, cash, and net-profit agreements associated with the development of a tract of land were included in a devise of "real property." *Id.* at 638. Applying the definitions of "real property" as "land, and generally whatever is erected or growing upon or affixed to land," and "personal property" as "everything that is subject to ownership not falling under the definition of real estate," the court concluded the disputed property was personal, not real. *Id.* at 640 (citations omitted); *see Helvering v. O'Donnell*, 303 U.S. 370, 371, 58 S.Ct. 619, 82 L.Ed. 903 (1938) (owner of shares in company that developed and operated oil and gas properties had net profits interest, a "personal covenant," not "an interest in the properties themselves"); *LeBus v. Le-Bus*, 269 S.W.2d 506, 508, 510–11 (Tex.Civ. App.-Fort Worth 1954, writ ref'd n.r.e.) (party, who agreed to receive part of net profits of oil and gas lease operations and lease resale in exchange for acting as agent in lease negotiation, had no title to or ownership of lease or license to explore and produce minerals; party "had only a contractual right to have his share of the profits paid over to him when they were earned").

Baxter's evidence established conclusively that, pursuant to the authorities cited above, the Snyder Net Profits Interest is personal property, not real property. *See MMP, Ltd.*, 710 S.W.2d at 60. Therefore, the burden shifted to Berthelot. *See City of Houston*, 589 S.W.2d at 678–79. Berthelot's first argument is that the 1950 Butler assignment showed that the net cash gain interest consisted of net profits realized by a natural gas processing plant from processing casinghead gas produced by wells. We reject this argument because the definition set out above shows the net profits interest was derived from the operations of the plant, not the production of the leases.

Next, Berthelot argued that the Snyder Net Profits Interest is an interest in land pursuant to *T–Vestco Litt–Vada v. Lu–Cal One Oil Co.*, 651 S.W.2d 284 (Tex.App.-Austin 1983, writ ref'd n.r.e.). Berthelot relies on the definition in that case of a "net profits interest" that the court likened to a working interest, a fractional interest in oil and gas property. *Id.* at 291 (citing 2 HOWARD R. WILLIAMS & CHARLES J. MEYERS, OIL & GAS LAW § 424). However, the concept of "net profits" discussed there was a right to production of well operations. *See id.* That case is distinguishable on the facts from this case, where the evidence shows the net profits were from a gasoline plant production, not from well operations. Accordingly, despite the use of common terms, we conclude Berthelot's reliance on *T–Vestco* is misplaced and does not support her argument that the Snyder Net Profits Interest is an interest in real property.

### 2. 1987 Settlement Agreement

The 1987 Settlement Agreement stated that Virginia conveyed her title in the net cash gain interest and reserved "a life estate ... and any income she would otherwise have derived therefrom." The legal definition of a "life estate" is "[a] legal arrangement whereby the beneficiary (*i.e.*, the life tenant) is entitled to the income from the property for his or her life[ ] ... [and] [u]pon the death of the life tenant, the property will go to the holder of the remainder interest...." BLACK'S LAW DICTIONARY 924 (6th ed. 1990). Relying on that definition and on the 1987 Settlement Agreement, Baxter argued that he established he held title to the Snyder Net Profits Interest as the remainderman on Virginia's death on August 13, 2006.

Berthelot responds that, because the Snyder Net Profits Interest was an interest in real property, Baxter's failure to

record the 1987 Settlement Agreement voided his interest pursuant to section 13.001 of the Texas Property Code. *See* TEX. PROP.CODE ANN. § 13.001 (Vernon 2004) ("Validity of Unrecorded Instrument"). As relevant to this appeal, however, by its terms the statute applies to "[a] conveyance of real property or an interest in real property or a mortgage or deed of trust. . . ." *Id.* § 13.001(a). We have already rejected Berthelot's argument that the Snyder Net Profits Interest is an interest in real property.

■ Berthelot also points to the "mortgage or deed of trust" phrase in section 13.001(a) and argues that, because the 1950 Butler assignment provided for a lien with a right of foreclosure in the event of non-payment of the net cash gain, the conveyance in the 1987 Settlement Agreement of the Snyder Net Profits Interest should have been recorded. She also notes that the 1950 Butler assignment was recorded in Scurry County, showing the parties creating the net cash gain interest considered it an interest in real property. Both of these arguments fail because, while the 1950 Butler assignment concerned the conveyance of oil and gas leases, among other interests, the reservation did not; it concerned a contract right to a share in the plant's net profits. Accordingly, we reject Berthelot's argument that Baxter's interest is void because he failed to record the 1987 Settlement Agreement pursuant to section 13.001.

■ Berthelot also argues the 1987 Settlement Agreement is "fatally defective" because it fails to provide "a sufficient legal description of the net profits interest." That argument is based on a page missing from an exhibit to the 1987 Settlement Agreement. That agreement provides for the transfer of the Snyder Net Profits Interest to Baxter, reserving a life estate in Virginia, and states that the Sny-

der Net Profits Interest is "more specifically described in Exhibit D attached hereto." Exhibit D is a copy of the 1950 Butler assignment, but that exhibit is missing the page of that document defining the "net cash gain of Scurry Natural Gasoline Corporation," which is the original interest from which Virginia's interest—which we refer to as the Snyder Net Profits Interest—is derived. Because of the page missing from the exhibit, Berthelot argues that the Snyder Net Profits Interest is "insufficiently described" in the 1987 Settlement Agreement, making that agreement ineffective to convey any interest to Baxter.

■ Berthelot relies on the statute of frauds, which requires conveyances of real property to be in writing and signed by the party to be charged. The statute of frauds is inapplicable here because we have already determined that the Snyder Net Profits is not real property. *See* TEX. BUS. & COMM.CODE ANN. § 26.01(a), (b)(4) (Vernon 2009).

Berthelot also relies on *Morrow v. Shotwell,* 477 S.W.2d 538, 539 (Tex.1972), which discusses real property and states: "To be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty." *Morrow* relates specifically to transfers of real property. Moreover, by referring to the attached exhibit, the 1987 Settlement Agreement does refer to some other existing writing—namely, the 1950 Butler assignment—albeit with a page missing.

■ The absence of the missing page from the exhibit does not render the 1987 Settlement Agreement void. Instead, we are guided by a broader principle that includes the personal property at issue here: "Where a writing is incomplete or

ambiguous, parol evidence is admissible to explain the writing or to assist in the ascertainment of the true intention of the parties insofar as the parol evidence does not alter or contradict any part of the written memorandum in question." *Warren Bros. Co. v. A.A.A. Pipe Cleaning Co.,* 601 S.W.2d 436, 439–40 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.). Because Exhibit D is incomplete, parol evidence can be considered to explain the meaning of the "net cash gain of Scurry Natural Gasoline Corporation." Such parol evidence—in the sense of being evidence outside of Exhibit D itself—would include a copy of the missing page found in the 1950 Butler assignment. Here, Baxter filed a motion to supplement the record with the missing page from the recorded 1950 document. In its judgment, the trial court granted the motion. Berthelot does not challenge this part of the judgment.

We conclude the missing portion of Exhibit D to the 1987 Settlement Agreement can be ascertained by referring to the 1950 Butler assignment. Accordingly, we reject Berthelot's argument that the 1987 Settlement Agreement was ineffective because of the missing page to the exhibit.

Relying on the use of "usufruct" in the 1987 Settlement Agreement, Berthelot also argues Virginia's estate was void because a usufruct is a Louisiana estate in property that is void in Texas. We reject this argument because the 1987 Settlement Agreement specifically refers to Virginia's interest as a "life estate," as quoted above.

Finally, Berthelot argues summary judgment for Baxter is precluded because she raised fact issues on her defenses of estoppel, fraud, and laches. Baxter moved for traditional and no-evidence summary judgment on these defenses. In her response and on appeal, Berthelot rests these defenses on Baxter's failure to give notice of his interest by failing to record the 1987 Settlement Agreement pursuant to section 13.001 of the property code. Because we have determined that section 13.001 does not apply here, we reject her argument that these defenses precluded the trial court from granting summary judgment for Baxter on his claim to title of the Snyder Net Profits Interest.

**3. Sheriff's Sale of Virginia's Interest**

■ Baxter argued that at the sheriff's sale, Berthelot purchased only a life estate interest in the Snyder Net Profits Interest because section 34.045(a) of the civil practice and remedies code specifically limits the interest transferred through a sheriff's sale to the interest actually owned by the former owner on the date of the sale. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 34.045(a) (Vernon 2008) ("When the sale has been made and its terms complied with, the officer shall execute and deliver to the purchaser a conveyance of all the right, title, interest, and claim that the defendant in execution had in the property sold.").

Berthelot does not challenge Baxter's reliance on section 34.045(a) either in her response or on appeal. Instead, Berthelot argues that Virginia owned the Snyder Net Profits Interest in fee simple, not just a life estate, and therefore Berthelot acquired the Snyder Net Profits Interest in fee simple as a result of the sheriff's sale. The premise of this argument is that the 1987 Settlement Agreement failed to convey a remainder interest to Baxter due to the missing page in the 1987 Settlement Agreement and Baxter's failure to record the 1987 Settlement Agreement in Scurry County. However, we have already disposed of these arguments against Berthelot. We conclude that Virginia conveyed to Baxter a remainder interest in the Snyder Net Profits Interest through the 1987 Settlement Agreement, reserving a life es-

tate interest, leading to the further conclusion that Baxter proved as a matter of law that the sheriff's bill of sale conveyed a life estate interest to Berthelot.

### 4. Berthelot's counterclaims

Baxter moved for traditional and no-evidence summary judgment on Berthelot's counterclaim for quiet title. That claim is based on her argument that, because the 1987 Settlement Agreement was not recorded and she had no notice of Baxter's claim until January 2007, the conveyance of a remainder interest to Baxter was void, and she was a bona fide purchaser in good faith without notice of the Snyder Net Profits Interest. *See* Tex. Prop. Code Ann. § 13.001. However, the undisputed summary judgment evidence shows that the Snyder Net Profits Interest is personal, not real, property and not subject to section 13.001. This evidence conclusively disproved Berthelot's counterclaim to quiet title. *See Schafer,* 875 S.W.2d at 456; *Adams,* 713 S.W.2d at 153.

Baxter also moved for traditional and no-evidence summary judgment on Berthelot's counterclaims for fraud, fraudulent transfer, and economic coercion and duress. By failing to direct any argument on appeal to the trial court's granting summary judgment and dismissing these counterclaims with prejudice, Berthelot has failed to preserve any error regarding them. *See City of Houston,* 589 S.W.2d at 678–79; *Malooly Bros., Inc.,* 461 S.W.2d at 121.

### 5. Conclusion regarding title to Snyder Net Profits Interest

Having rejected Berthelot's arguments, we conclude the trial court properly rendered summary judgment declaring title to the Snyder Net Profits Interest to be vested in Baxter. We resolve Berthelot's first issue against her.

### D. Declaratory Relief concerning Funds Derived from Snyder Net Profits Interest

Baxter moved for summary judgment on his claim for two categories of funds. The first category consists of funds (totaling $15,621.12) that WTG held following its suspension of payments; this amount constitutes net profits from operations before Virginia's death that were declared for payment after her death. Baxter asserted he was entitled to these suspended funds because, pursuant to *Bergin v. Bergin,* 159 Tex. 83, 91 315 S.W.2d 943, 948 (1958), and as codified by sections 116.101 and 116.102 of the Texas Property Code, claims by life estate holders to funds not distributed during the life estate term were precluded.

As applicable here, the supreme court in *Bergin* adopted the "Massachusetts Rule" regarding the distribution of earnings between the life estate and remainder interests: earnings distributed as stock dividends are payable to the corpus (remainderman), earnings distributed as cash dividends are payable to the income (life beneficiary), and the life beneficiary is not entitled to earnings distributed after the life tenancy ends. *See Bergin,* 159 Tex. at 93, 315 S.W.2d at 948, 950 (Garwood, J., concurring); *see also* Tex. Prop.Code Ann. § 116.101(d) (Vernon 2007) ("An income interest ends on the day before an income beneficiary dies...."). Watkins testified that calculations for the amount of $15,621.12 were finalized after August 2006, and WTG set a due date for paying these funds after August 2006.

On appeal, Berthelot argues that the suspended funds were corrections of accounting errors made during the time period before Virginia's death and that therefore this amount should have been paid during that time. However, the court in *Bergin* considered and rejected this argu-

ment, explaining the rationale of the rule it adopted:

> If we thus recognize a right in the life tenant to undistributed profits, a large number of life estates will inevitably involve complicated and difficult problems of accounting, which may run back years, and perhaps even reach into the propriety of the accounting methods of the corporation concerned.

*Bergin*, 159 Tex. at 93, 315 S.W.2d at 950 (Garwood, J., concurring).

Berthelot also argues she is entitled to all sums paid after Virginia's death that accrued before her death under a "delayed income" doctrine pursuant to *San Antonio Loan & Trust Co. v. Hamilton*, 155 Tex. 52, 283 S.W.2d 19 (1955). However, that case concerned the apportionment between the life tenant and the remainderman of property bought with funds from both interests. The "profits" of the corpus were paid to the life tenant during her life. *See San Antonio Loan & Trust Co.*, 155 Tex. at 56, 283 S.W.2d at 21. The suspended funds here concern funds that were not declared for payment during the existence of the life estate and were not paid to the life estate holder before the life estate ended. Because the facts in *San Antonio Loan & Trust Co.* are different from the facts in this case, Berthelot's reliance on it is misplaced.

The second category of funds in dispute consists of funds (totaling $25,417.71) that represented net profits from operations after Virginia's death that WTG paid to Berthelot before it suspended payments. Baxter argued these funds belonged to the owner of the Snyder Net Profits Interest, which he was following Virginia's death, and his ownership of this interest entitled him to a declaration that he owned the funds and Berthelot should be ordered to return this amount to him.

On appeal, Berthelot also argues she is entitled to funds paid to her after Virginia's death and before Baxter's January 2007 "notice of claim" under her defenses of estoppel and laches. We have already rejected Berthelot's arguments that those defenses apply for failure to record the 1987 Settlement Agreement. Rejecting Berthelot's arguments that she is entitled to certain suspended sums and sums she was paid, we resolve her second issue against her.

## III. CONCLUSION

Having have rejected Berthelot's two issues challenging the trial court's summary judgment in Baxter's favor on his declaratory judgment claims, we affirm the trial court's judgment.