

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00321-CV

———————————————

HA N. TRAN, Appellant

V.

BRAN-DAN PARTNERSHIP, LLC, Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-308560-19

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

This is an appeal from rulings on dueling summary-judgment motions that settled a property dispute. Appellant Ha N. Tran appeals the trial court's order granting (1) Appellee Bran-Dan Partnership, LLC's summary-judgment motion solely on its counterclaims for trespass to try title and suit to quiet title and in opposition to Ha's causes of action for declaratory judgment and trespass to try title and (2) denying Ha's summary-judgment motion on her title claims in its entirety. In three issues, Ha argues that Bran-Dan obtained no interest in the property due to the wording in the notice of sale and the constable's deed under which Bran-Dan claims title, that the property at issue was her homestead and therefore was exempt from execution, and (alternatively) that the trial court should have granted her summary-judgment motion as to Bran-Dan's claim under the Texas Uniform Fraudulent Transfer Act (TUFTA) and its civil-conspiracy claim.[1] Because the sale to Bran-Dan was effective as of the date of the judgment lien—at a time when Ha did not own the property—and because Ha lost her homestead status when she alienated the property by conveying it to her sister in 2017, we affirm without reaching Ha's contingent third issue.

---

[1]Bran-Dan offered to waive its remaining claims if the trial court granted its motion for summary judgment on its counterclaims for trespass to try title and suit to quiet title.

## II. Background

Ha has lived at the property in Grand Prairie since she purchased it in 2009.[2] In November 2017, she conveyed title to her sister Pauleen Tran. Pauleen has never occupied the property.

On November 8, 2018, in unrelated litigation, a judgment was rendered against Pauleen. An abstract of the judgment was issued and filed in the Tarrant County property records on November 21, 2018. On January 28, 2019, the judgment creditor applied for a writ of execution to enforce the judgment against Pauleen.

On March 8, 2019, Ha filed a special warranty deed indicating that, on January 15, 2019 (approximately two weeks before the application for writ of execution was filed), Pauleen had conveyed the property back to Ha.

On April 8, 2019, the Tarrant County Constable levied the property in accordance with the writ of execution, stating that it would sell any interest Pauleen had in the property on or after "the 8th day of April, A.D. 2019." In May 2019, Bran-Dan purchased the property at the execution sale. The language in the constable's deed, issued after the sale, purported to convey to Bran-Dan any interest Pauleen had in the property "on the 8th day of April, 2019, or at any time afterwards." Bran-Dan's purchase of the property led to the discharge of the judgment lien that the plaintiff in the unrelated litigation had held against Pauleen.

---

[2]In her deposition, Ha said that she had lived at the property since 2011.

After the purchase, Bran-Dan sent a notice to Ha to vacate the property. She refused.

The current lawsuit thereafter ensued with each party claiming superior right of title.[3] Pauleen was named as a third-party defendant, but she is not a party to this appeal.

Ha and Bran-Dan both filed motions for summary judgment, as well as responses and amended responses. Bran-Dan stated in its amended summary-judgment motion that it was seeking only a finding of liability against Ha and Pauleen, as well as a judgment for title and possession of the property, and that it was prepared to abandon certain of its remaining causes of action and its claim for monetary damages and attorneys' fees if the trial court were to grant the motion. The trial court initially denied both parties' summary-judgment motions in August 2020.

---

[3]In her second amended petition, Ha added the Internal Revenue Service as a defendant because the IRS had filed on March 11, 2019, a notice of federal tax lien related to unpaid taxes on the property. The IRS answered and admitted the following:

> The United States admits that the record evidence developed in this case indicates that the levy and sale under a writ of execution that Third-Party Defendant Pauleen Tran's judgment creditor obtained relates back to the recording of the abstract of judgment dated November [2]1, 2018. The United States admits that any lien created by the abstract of judgment and later writ of execution that attached to the subject property through Third-Party Defendant Pauleen Tran's interest in or ownership of the property is prior in time and superior to the IRS lien recorded on March 11, 2019.

Ha later nonsuited all of her causes of action against the IRS.

4

In the two years that followed, the parties amended their pleadings and then filed a joint motion to reconsider their prior summary-judgment motions. In June 2023, the trial court signed a final judgment that included the following findings and orders:

> After reviewing and considering the respective Motions for Summary Judgment, the evidence, the responses, replies, and all objections of the parties, if any, which are overruled, the [c]ourt FINDS and HOLDS . . . that the motion of Bran-Dan Partnership, LLC should be granted in part only as to its causes of action for trespass to try title and suit to quiet title and in opposition to Plaintiff Ha N. Tran's cause of action for declaratory judgment and is denied as to all other issues. The [c]ourt further FINDS and HOLDS that the Summary[-]Judgment Motion of Ha N. Tran is in all things denied.
>
> The [c]ourt further FINDS and HOLDS that Defendant Bran-Dan Partnership, LLC, has expressly waived any of its causes of action or relief that is not otherwise granted in this Final Judgment against Plaintiff Ha N. Tran and further has expressly waived all of its causes of action or relief claimed against Third Party Defendant Pauleen Tran.
>
> The [c]ourt further acknowledges that Plaintiff Ha N. Tran has non[]suited without prejudice [ ] all of her causes of action against the [IRS].
>
> IT IS THEREFORE ORDERED that Bran-Dan Partnership, LLC has a superior claim of title to the real property and is declared the record title owner of the subject property, which is located [in] Grand Prairie, Texas . . . .
>
> . . . .
>
> IT IS FURTHER ORDERED that the causes of action and claims for relief of Plaintiff Ha N. Tran that were not non[]suited are DENIED.
>
> The [c]ourt further finds that all causes of action in this cause have been disposed of by either Summary Judgment, waiver, or non[]suit. It is therefore

5

ORDERED that Bran-Dan Partnership, LLC shall have all writs of execution and other process issued necessary to enforce this [j]udgment[,] and further the [c]ourt

ORDERS that all other relief requested by any party to this suit is hereby denied and that this judgment disposes of all parties and issues before the [c]ourt and is therefore final and appealable.

Ha filed a motion for new trial, which was overruled by operation of law. She then perfected this appeal.

### III. Summary-Judgment Standard of Review

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary-judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848. We should then render the judgment that the trial court should

have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848.

## IV. Constable's Sale Relates Back to the Date of the Judgment Lien

In her second issue, Ha argues that the trial court erred by granting in part Bran-Dan's summary-judgment motion, denying her summary-judgment motion in its entirety, and declaring Bran-Dan the rightful owner of the property because the plain, express language of the notice of sale and the constable's deed limits Bran-Dan's purchase to whatever interest that Pauleen had as of April 8, 2019. Ha contends that because Pauleen had conveyed the property to Ha earlier in 2019, Pauleen had no interest in the property as of April 8, 2019, and that Bran-Dan thus acquired no interest in the property at the constable's sale. Ha's argument fails because the levy date (April 8, 2019) relates back to the judgment-lien date (November 21, 2018), which predates the conveyance from Pauleen to Ha.

### A. Applicable Law[4]

The Houston First Court of Appeals has explained the process of obtaining a judgment lien and the process of foreclosing on that lien:

> When a lien is properly filed in the property records of a county, the lien attaches to any real property of the defendant in that county. Tex. Prop. Code Ann. § 52.001 . . . . Thus, "[w]hen properly recorded and indexed, an abstract of judgment creates a judgment lien that is superior to the rights of subsequent purchasers and lien holders." *Wilson v. Dvorak*, 228

___

[4]Bran-Dan relies on *Gordon v. West Houston Trees, Ltd.*, 352 S.W.3d 32, 39 (Tex. App.—Houston [1st Dist.] 2011, no pet.). That case sets forth a detailed explanation of the applicable law, and we therefore borrow from it. *Id.* at 38–40.

S.W.3d 228, 233 (Tex. App.—San Antonio 2007, pet. denied). Accordingly, if a judgment lien is properly attached to property, a subsequent purchaser of the property purchases it subject to the judgment lien. *W. Trinity Props., Ltd. v. Chase Manhattan Mortg. Corp.*, 92 S.W.3d 866, 870 (Tex. App.—Texarkana 2002, no pet.) (holding subsequent purchaser takes property subject to prior lien).

A judgment-holder can foreclose on a judgment lien either through an independent suit or through an execution sale. [*Jong Ik*] *Won*[ *v. Fernandez*], 324 S.W.3d [833,] 835 n.2[ (Tex. App.—Houston [14th Dist.] 2010, no pet.)]. Execution is a method of enforcing a judgment by which a judgment creditor obtains from a court a writ of execution that meets certain requirements and delivers it to a sheriff or constable. *Id.* at 834; *see* Tex. R. Civ. P. 621, 622, 629. If the officer follows all appropriate procedures, the property may be sold to satisfy the judgment. [*Jong Ik*] *Won*, 324 S.W.3d at 834; *see* Tex. R. Civ. P. 646a–650.

"A valid judgment, execution, and sale are required to pass title to property at an execution sale." *Clint Indep. Sch. Dist. v. Cash Invs., Inc.*, 970 S.W.2d 535, 537 (Tex. 1998); [*Jong Ik*] *Won*, 324 S.W.3d at 835. The writ of execution gives the officer authority for the sale of the property, and the levy in the execution process creates an execution lien. [*Jong Ik*] *Won*, 324 S.W.3d at 835; *see* Tex. R. Civ. P. 629, 637, 639. The officer levies on the property described in the writ of execution, usually, in the case of real property, by endorsing the writ. [*Jong Ik*] *Won*, 324 S.W.3d at 834. "A valid levy of an execution creates a lien on the debtor's property in favor of the judgment creditor." *Id.* (quoting *Tex. Emp'rs Ins. Ass'n v. Engelke*, 790 S.W.2d 93, 95 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding)).

A judgment lien and an execution lien work together so that "[i]f a judgment creditor obtains a judgment lien and then executes on the judgment, the date of the execution lien *relates back* to the date of the judgment lien, thereby giving the judgment creditor priority over other creditors with claims arising after the date of the judgment lien." *Id.* at 835 n.3. When the property subject to the execution lien is sold, the purchaser obtains an execution deed. *See id.* at 835. The purchaser at the execution sale obtains whatever title the grantor had at that time. [*Diversified, Inc. v.* ]*Hall*, 23 S.W.3d [403,] 407[ (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (op. on reh'g)].

8

*Gordon*, 352 S.W.3d at 39–40 (emphasis added).

Additionally, Texas Property Code Section 52.001 explains the establishment of a lien as follows:

> Except as provided by Section 52.0011 or 52.0012, a first or subsequent abstract of judgment, when it is recorded and indexed in accordance with this chapter, if the judgment is not then dormant, constitutes a lien on and attaches to any real property of the defendant, other than real property exempt from seizure or forced sale under Chapter 41, the Texas Constitution, or any other law, that is located in the county in which the abstract is recorded and indexed, including real property acquired after such recording and indexing.

Tex. Prop. Code Ann. § 52.001. And the Texas Practice Guide explains how the relation-back doctrine comes into play with the enforcement of a real-property judgment lien:

> A judgment lien on real property is enforced by levy and sale of the real[-]property interest under writ of execution. As long as the writ of execution is levied while the judgment lien is in effect, priority under the execution lien "relates back" to creation of the judgment lien. *U.S. v. F.D.I.C.*, 881 F.2d 207, 209 (5th Cir. 1989) . . . (abstract is equivalent to an attachment in that each fixes a lien on the debtor's realty which lien is foreclosed through execution sale)[5] . . . . However, the judgment creditor's lien may become dormant if he fails to issue execution within a reasonable time.

2 Robin Russell & James W. Paulsen, *Tex. Prac. Guide: Creditors Rights* § 9.48 (Dec. 2023 update).

"A sheriff's sale only conveys the right, title, and interest that the judgment debtor had in the property. . . . A sheriff's deed is in the nature of a quitclaim deed

---

[5]*F.D.I.C.* cites *Stewart v. Rockdale State Bank*, 52 S.W.2d 915, 916 (Tex. App.—Austin 1932), *aff'd*, 79 S.W.2d 116 (Tex. 1935).

because it contains no warranty of title and conveys only whatever interest the judgment debtor had in the property." *Apex Fin. Corp. v. Garza*, 155 S.W.3d 230, 236 (Tex. App.—Dallas 2004, pet. denied) (citing both Tex. Civ. Prac. & Rem. Code Ann. § 34.045, and *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 769 (Tex. 1994)).

## B. Notice of Sale and Constable's Deed

Despite the relation-back doctrine, Ha relies on the wording in the notice of constable's sale to show what interest she alleges was actually conveyed; that language states in pertinent part as follows:

> BY VIRTUE OF A Civil Law Execution (Judgment for Money) issued out of the 348th Judicial District Court of Tarrant County, Texas, in a certain cause numbered: 348-297348-18; on the 29th day of March A.D. 2019 styled: **Julie Truong vs. . . . iPamper at Denton, LLC, Pauleen Hang Tran, Jennifer Tran, and Soss Tax Inc.**, to me, as Constable directed and delivered, I have levied upon this 8th day of April, 2019 and will between the hours of 10:00 A.M. and 4:00 P.M. (At approximately 10:00 A.M.), on the first Tuesday in May, A.D. 2019, it being the 7th day of said month, on the east side of the Courthouse (facing Commerce St.), 100 W. Weatherford, Fort Worth of said Tarrant County, proceed to sell at public auction to the highest bidder, for cash in hand, *all right, title and interest, if any, which the defendant:* **Pauleen Hang Tran**, *had on the 8th day of April, A.D. 2019*, or at any time thereafter, of, in, and to the following described property [in Grand Prairie.[6]] [Emphasis added in italics.]

Ha also relies on similar language found in the constable's deed:

> NOW, THEREFORE, in consideration of the premises aforesaid, and the payment of said sum of $92,544.00 DOLLARS, the receipt of which

---

[6]The notice and the constable's deed both cite the complete, correct property address. *See* Tex. R. App. P. 9.9(a)(3), (c) (requiring redaction of specific address, which is sensitive data).

is hereby acknowledged, I, Darrell Huffman, Constable, as aforesaid, have sold, and by these presents do grant and convey unto the said Bran-Dan Partnership LLC *all the estate, right, title and interest, if any, which the said* iPamper at Denton, LLC, *Pauleen Hang Tran*, Jennifer Tran, and Soss Tax Inc. *had on the 8th day of April, 2019*, or at any time afterwards, in and to the following described premises[ in Grand Prairie.[7]]  [Emphases added.]

## C.    Analysis

### 1.    Application of Relation-Back Doctrine

Here, Ha argues in part that Bran-Dan obtained no interest via its purchase of the property at the constable's sale because Pauleen had no interest in the property on the date of the sale due to her postjudgment-lien, pre-constable-sale transfer of the property to Ha.  If we took Ha's argument as true, then judgment debtors could always thwart judgment liens by conveying all their real property before the execution sale.  The law, however, does not allow this.  *See John F. Grant Lumber Co. v. Hunnicutt*, 143 S.W.2d 976, 976 (Tex. App.—Waco 1940, no writ) (stating that under our statutes, "the recording of an abstract of judgment creates a lien upon all of the debtor's property within the county from the time it is recorded and indexed" and that, "[n]ecessarily, such lien is superior to the rights of subsequent purchasers and lienholders, for otherwise it would be of practically no value").

This concept is illustrated in *Gordon*, which involved a conveyance from a father to his son after the father's creditor had obtained a judgment against the father:

---

[7] *See id.*

11

- On July 14, 2006, West Houston Trees obtained a money judgment against appellant's father, Winter Gordon Sr., who at that time owned a tract of land in Fort Bend County. 352 S.W.3d at 35.

- On July 24, 2006, West Houston Trees obtained an abstract of judgment and filed it in the Fort Bend County property records, creating a judgment lien on all of Winter's real property in Fort Bend County. *Id.*

- On February 9, 2007, West Houston Trees obtained an order of sale on the property. *Id.* at 36.

- On March 22, 2007, appellant filed in the Fort Bend County property records a "Purchase and Sale Agreement" dated that day, and appellant asserted that the document conveyed the property to him. *Id.* Appellant later filed in the Fort Bend County records an "Amended Warranty Deed," backdated to March 22, 2007; the document was signed by appellant and his father and purported to correct errors in the March 22 Purchase and Sale Agreement. *Id.*

- On April 3, 2007—after West Houston Trees had obtained a writ of execution on the judgment—the Fort Bend County Constable conducted a constable's sale of the property, and West Houston Trees purchased the property. *Id.*

- On April 20, 2007, a "Deed under Execution" was executed, and West Houston Trees filed it in the Fort Bend County property records on June 27, 2007. *Id.*

The *Gordon* court held that the execution lien created in favor of West Houston Trees related back to July 24, 2006—the date of the filing of West Houston Trees's judgment lien—giving it priority over subsequent purchasers. *Id.* at 41. The court further held that

> the Execution Deed obtained by West Houston Trees and recorded in the Fort Bend County property records following its purchase of the property at the Execution Sale properly reflected transfer of title from [Winter], the owner of the property on the date the judgment lien attached, to West Houston Trees.

*Id.*

Here, we have a similar scenario. Although Pauleen conveyed the property at issue back to Ha before the execution sale in April 2019, the judgment lien had already attached to the property in November 2018 when the judgment was abstracted in Tarrant County. The constable's sale thus related back to November 21, 2018—the effective date of the judgment lien. *See Masterson v. Adams*, 197 S.W.2d 154, 156 (Tex. App.—Galveston 1946, writ ref'd n.r.e.) (stating that "[i]t is true that the described execution sales in 1940, as claimed under by the appellee, were subsequent to the deed dated October 2, 1928, in turn relied upon by the appellant" but noting that "as the trial court's findings recite, these sales by law related back to the foreclosed abstract of judgment liens that had been fixed in 1925, which liens were

13

therefore fixed as being prior and superior to the appellant's deed of 1928"); *see also Gordon*, 352 S.W.3d at 41; *Smith v. Adams*, 333 S.W.2d 892, 894, 896 (Tex. App.—Eastland 1960, writ ref'd n.r.e.) (holding that the 1941 execution sales related back to the inception of liens created by the proper recording and indexing of the 1925 and 1928 judgments and that because the 1941 foreclosure of the "judgment liens fixed in 1925 and 1928 related back to said dates[,] . . . [the judgment debtor's] attempt to convey [the property] to Boyles in 1933 [was] ineffectual"); *Holford v. Patterson*, 240 S.W. 341, 346 (Tex. App.—Amarillo 1922) (op. on reh'g) (stating that "upon foreclosure of the attachment lien and the sale thereunder[,] the purchaser . . . obtained the title of L.L. Holford, which related back to the levy and divested the title out of him, which he had on the date of the levy" and that appellee established a legal title when he showed a lien, judgment, and purchase thereunder), *aff'd*, 257 S.W. 213 (Tex. 1923).

### 2. Notice and Deed Language Do Not Control

As noted above, Ha attempts to rely on the language from the notice of sale and the constable's deed instead of the applicable relation-back doctrine. Ha argues that in cases in which the express language of the officer's execution deed has specified that it conveyed only the interest the judgment debtor had in a property at the time of the sale, Texas courts have adhered to the deed's express language. To support her argument, Ha cites *Berthelot v. Brinkmann*, 322 S.W.3d 365, 373 (Tex. App.—Dallas 2010, pet. denied), and *Dolenz v. WTG Gas Processing, L.P.*, No. MO-06-

14

CV-117, 2009 WL 10703818, at *3 (W.D. Tex. Mar. 31, 2009) (order). At the crux of both cases is the interpretation of the interest conveyed by a 1987 settlement agreement in which Virginia Brinkmann conveyed the Snyder Net Profits Interest to her son (Baxter), subject to a life-estate interest that she reserved to herself. *See Berthelot*, 322 S.W.3d at 368, 370–74; *Dolenz*, 2009 WL 10703818, at *1–2. *Berthelot* dealt with the interest that was obtained by a judgment creditor (Berthelot) who was also the purchaser in a 1994 sheriff's sale of "all the right, title[,] and interest which the said Virginia Brinkmann held on the 1st day of February . . . 19[9]4"[8] in the Snyder Net Profits Interest. 322 S.W.3d at 368, 370. In *Dolenz*, Baxter intervened to claim his remainder interest in a suit involving the other judgment creditor (Dolenz) who had sought to obtain the portion of the Snyder Net Profits Interest that he claimed should have been paid to him by the gas processing plant. 2009 WL 10703818, at *1–2. The cases are not analogous to the situation here because Virginia's interest in such property was governed by a 1987 settlement agreement in which she had conveyed the Snyder Net Profits Interest to Baxter, subject to a life-estate interest that she had reserved to herself, and because the 1993 judgment against Virginia postdated the 1987 settlement agreement. *See Berthelot*, 322 S.W.3d at 368,

---

[8]The *Berthelot* opinion appears to contain a typographical error because it states in one place that the sheriff sold to Berthelot "all the right, title[,] and interest which the said Virginia Brinkmann held on the 1st day of February . . . 1984," but that would precede the date of the 1993 judgment—the judgment that prompted the sale. 322 S.W.3d at 368. Later, the opinion refers to "'all the right, title[,] and interest' Virginia held on February 1, 1994, to the Snyder Net Profits Interest." *Id.* at 370. This latter reference fits with the other facts and thus appears to be the correct date.

15

370–74; *Dolenz*, 2009 WL 10703818, at *3–4. Thus, the fact that both courts concluded that Virginia had conveyed to Baxter "a remainder interest in the Snyder Net Profits Interest through the 1987 Settlement Agreement, reserving a life[-]estate interest, leading to the further conclusion that Baxter [had] proved as a matter of law that the sheriff's bill of sale conveyed [only] a life[-]estate interest" is not surprising given that there was no intervening transfer between the 1993 judgment and the 1994 sheriff's sale. *See Berthelot*, 322 S.W.3d at 368, 373–74; *see also Dolenz*, 2009 WL 10703818, at *3. The outcome of those cases was not dependent on the language in the sheriff's sale documents but on the nature of Virginia's interest at the time of the judgment lien's attachment. Therefore, these cases do not control.[9]

Ha ignores prior precedent from this court stating that defects in a sheriff's deed do not destroy the purchaser's interest acquired under the sale and that the giving of a sheriff's deed is not essential to investiture of title. *See Burnam v. Blocker*, 247 S.W.2d 432, 434 (Tex. App.—Fort Worth 1952, writ ref'd). As long ago explained by the Texas Supreme Court, "[T]he title of a purchaser of land at [a] sheriff's sale does not depend upon the deed. It rests upon a valid judgment, levy and execution sale, and the payment of the money. The sheriff's deed is not essential." *Donnebaum v. Tinsley*, 54 Tex. 362, 365 (1881).

---

[9]Similarly, *Apex Financial* (which Ha cites in her brief) and *Diversified* (which is mentioned above) do not control the outcome here because in those two cases, the property owner at the time of the lien's attachment was *not* the judgment debtor. *See Apex Fin. Corp.*, 155 S.W.3d at 233, 236; *Diversified*, 23 S.W.3d at 405, 407.

Additionally, "it is the policy of the law to sustain execution sales. . . . Judicial policy does not urge courts to scrutinize sheriff's sales with an intent to defeat them. [Instead, e]very reasonable inference will be made in their favor to accomplish the goal of the sale." *Keda Dev. Corp. v. Stanglin*, 721 S.W.2d 897, 903 (Tex. App.—Dallas 1986, no writ) (citing both *Burnam*, 247 S.W.2d at 434, and *Smith v. Crosby*, 23 S.W. 10, 13 (Tex. 1893)); *see also AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008).

### 3. Conclusion and Disposition of Second Issue

Here, the summary-judgment evidence conclusively establishes that Pauleen owned the property at issue in November 2018 when the judgment lien attached. And thus when that judgment lien was later executed on via a constable's sale, the sale related back to November 2018. Moreover, because the constable's deed is in the nature of a quitclaim deed, the actual "conveyance" language used in the constable's deed cannot trump the applicability of the relation-back doctrine. Accordingly, we overrule Ha's second issue[10] and move to her first issue in which she challenges whether a judgment lien could have even attached to the property because it was her homestead. *See Hankins v. Harris*, 500 S.W.3d 140, 144 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("Generally, a lien may not attach to property that is held as the debtor's homestead[] because the Texas Constitution provides that homestead

---

[10]Although Ha mentioned in her brief that Bran-Dan incorrectly used the innocent-purchaser doctrine to fortify its position, Bran-Dan responds that it "never argued this [doctrine] in the summary[-]judgment briefing and expressly noted that it did not apply."

property is exempt from forced sale to pay debts, except for certain specified categories of debts." (first citing Tex. Const. art. XVI, § 50; and then citing *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 634 (Tex. 1987))).

## V. Homestead Alienation

In her first issue, Ha argues that the trial court erred by granting in part Bran-Dan's summary-judgment motion, denying her summary-judgment motion in its entirety, and declaring Bran-Dan the property's rightful owner because the record conclusively establishes that—or at least demonstrates genuine issues of material fact as to whether—the property was her exempt homestead at all relevant times. However, the summary-judgment evidence demonstrates that the property lost its designation as a homestead when Ha conveyed the property to Pauleen in 2017 and that it was never Pauleen's homestead.

### A. Applicable Law

Under settled Texas homestead law, homestead rights may be lost only through death, abandonment, or alienation. *Paull & Partners Invs., LLC v. Berry*, 558 S.W.3d 802, 809 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *In re Perry*, 345 F.3d 303, 310 (5th Cir. 2003)). Alienation occurs when "title to the property is transferred or conveyed to another regardless of whether the grantor retains possession of the property." *Id.* at 809 n.4 (citing *Perry*, 345 F.3d at 310 n.8).

The plea of homestead is an affirmative defense. *See Drake Interiors, L.L.C. v. Thomas*, 433 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)

(op. on reh'g) (first citing *Burk Royalty Co. v. Riley*, 475 S.W.2d 566, 568 (Tex. 1972); and then citing *Watson v. Tipton*, 274 S.W.3d 791, 800 (Tex. App.—Fort Worth 2008, pet. denied)). The initial burden to establish a homestead exemption is on the party claiming the exemption. *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 159 (Tex. 2015) (citing *Burk Royalty Co.*, 475 S.W.2d at 568). A nonmovant seeking to avoid summary judgment based on an affirmative defense must do more than just plead the affirmative defense. *Urias v. Owl Springs N., LLC*, 662 S.W.3d 561, 566 (Tex. App.—El Paso 2022, no pet.) (first citing *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); and then citing *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.)).

Thus to claim the constitutional protection afforded to homesteads, Ha had the burden to establish (1) overt acts of homestead usage and (2) the intention to claim the property as a homestead. *See Zorrilla*, 469 S.W.3d at 160. Once a property is established as a homestead, the burden shifts to the party challenging a homestead claim to prove termination of homestead status "by abandonment, alienation, or death." *See id.*[11]

---

[11]Ha contends in her brief that Bran-Dan did not argue that she had terminated her homestead status by alienation or death and focuses on the fact that she did not abandon the property. Bran-Dan responded in its brief that "[i]t is correct that [it] used the term 'abandon' once or twice in its [summary-judgment] briefing, but it is further clear that Bran-Dan explained that the extinguishment of homestead rights occurred because [Ha had] conveyed (or, more precisely, alienated) the [p]roperty to Paul[een] in 2017." Bran-Dan further noted that courts sometimes use the terms "abandonment" and "alienation" interchangeably, *see Perry*, 345 F.3d at 310 n.8, and

19

**B.   Analysis**

Ha stated in the declaration attached to her amended response to Bran-Dan's motion for summary judgment that she had continually resided at the property since she purchased it in 2009.  But it is undisputed that approximately eight years after Ha purchased the property, she conveyed it to her sister Pauleen.  And Ha attached to her amended joint response to Bran-Dan's amended motion for summary judgment the deed showing that Ha had conveyed the property to her sister in November 2017.[12] Ha's own motion presented evidence that negated her affirmative defense because this conveyance constitutes an alienation, as we have defined that term above.  Thus, the record conclusively establishes that as of November 2017, Ha had lost her homestead protection through alienation.  Indeed, Bran-Dan highlighted the effect of this transfer in its response and in its reply to Ha's summary-judgment pleading.  In its "Reply to Joint Response of Plaintiff/Third-Party Defendant to Amended Motion for Summary Judgment," Bran-Dan noted,

---

that it had never claimed that Ha had left the property with no intention to return. Bran-Dan expressly argued that the homestead character ended when Ha sold the property; therefore, it argued alienation at that time even if it later used the term "abandonment" in a different document.  Relying on the substance-over-form approach, we are not persuaded by Ha's argument and decline to read Bran-Dan's summary-judgment arguments so narrowly. *See generally Reynolds v. Sanchez Oil & Gas Corp.*, No. 01-18-00940-CV, 2023 WL 8262764, at *10 (Tex. App.—Houston [1st Dist.] Nov. 30, 2023, no pet.) (mem. op. on reh'g) ("Courts prioritize substance over form when construing the claims asserted in a petition.").

[12]Bran-Dan also attached a copy of this deed to its amended summary-judgment motion.

To the extent the [c]ourt finds that Ha Tran properly raised homestead as an affirmative defense, then Bran-Dan would argue the following. Assuming that Ha Tran claims the [p]roperty was her homestead before the April 8, 2019 levy date even though she does not say so in her pleadings, the law is abundantly clear that a property owner's transfer of homestead property to another party terminates his or her homestead interest. [Footnote omitted.]

Bran-Dan carried forward this argument in its "Amended Response to Plaintiff's Motion for Summary Judgment" by again arguing that "[a]ssuming that the [p]roperty was her homestead at one time, the law is abundantly clear that a property owner's transfer of homestead property to another terminates his or her homestead interest."

Ha tries to sidestep her own summary-judgment evidence, which showed that she had alienated the property and that Bran-Dan had clearly informed the trial court of the effect that the conveyance had on her ability to raise the affirmative defense of homestead, by arguing that although she had "briefly transferred title to the [p]roperty to Pauleen in November 2017, it is undisputed that Pauleen never occupied, possessed, or resided at the [p]roperty, at any point[][13] and [that Ha] continued to claim the [p]roperty as her homestead during that entire time." Ha's argument runs afoul of the fact that alienation occurs "regardless of whether the grantor retains possession of the property." *See Berry*, 558 S.W.3d at 809 n.4.

---

[13]Ha attached to her amended response to Bran-Dan's amended motion for summary judgment a declaration from Pauleen stating that she had never resided at nor had possession of the property.

This case is somewhat similar to the homestead scenario analyzed by the San Antonio Court of Appeals in *Galindo v. Border Federal Credit Union*, No. 04-12-00725-CV, 2013 WL 2145783, at *1–4 (Tex. App.—San Antonio May 15, 2013, pet. denied) (mem. op.).[14]  In *Galindo*, Maria and her husband purchased a house and real property in the 1970s, and Maria continued to live on the property after her husband died in 1998. *Id.* at *1.  In 2003, Maria signed a warranty deed conveying the property to her son because he had requested the use of her property as collateral for a loan from a bank. *Id.* at *1, *3.  The deed was promptly recorded of record, and Maria continued to live on the property. *Id.* at *1.  Approximately a year and a half later, Maria's son and his wife borrowed money from BFCU, and the son executed a deed of trust granting BFCU a lien on the property as security for the loan. *Id.*  BFCU later sued the son to foreclose on the lien, and BFCU obtained a judgment in its favor. *Id.*  Maria sued BFCU for a declaratory judgment and requested a temporary injunction to prevent the foreclosure. *Id.*  Maria claimed that the property was her homestead and relied on her continued possession of the property after the 2003 deed was executed. *Id.* at *2.  Maria also attempted to claim that the deed to her son was intended as a mortgage. *Id.*  The court noted that case law supported Maria's argument that retention of possession after the execution of a deed is a circumstance indicating that the deed was intended to evidence a mortgage, at least as between the parties to that transaction. *Id.*  The court, however, ruled against Maria, explaining that the record

_____

[14]Neither party cited this case.

22

contained no evidence that the transaction between Maria and her son was intended as a loan. *Id.* at *3. The court concluded that Maria had lost her homestead right in the property by conveying it to her son, that she had no interest in the property that could be affected by the foreclosure sale, and that she had no standing to challenge the validity of BFCU's lien or its foreclosure of that lien. *Id.*

Here, Ha does not argue that the deed to her sister was intended as a mortgage, and there is no evidence in the record to establish that the 2017 conveyance was intended as such. Thus, as did the court in *Galindo*, we conclude that the record conclusively establishes that Ha lost her homestead right in the property by conveying the property to her sister in 2017. *See id.* Accordingly, we hold that the trial court did not err by granting in part Bran-Dan's summary-judgment motion, by denying Ha's summary-judgment motion in its entirety, and by declaring Bran-Dan the rightful owner of the property. We overrule Ha's first issue.

## VI. Contingent Issue

Ha raises her third issue as a contingency: "Should [this court] determine for any reason that Bran-Dan did not expressly waive its TUFTA and civil[-]conspiracy claims, the [c]ourt should nonetheless reverse and render judgment denying Bran-Dan's motion for summary judgment as to [these claims]." As noted above, the trial court stated in the final judgment, "The [c]ourt further FINDS and HOLDS that Defendant Bran-Dan Partnership, LLC, has expressly waived any of its causes of action or relief that is not otherwise granted in this Final Judgment against Plaintiff

23

Ha N. Tran." Ha argues that "no other pending claim or request for relief by Bran-Dan could support the trial court's summary judgment." Because we have upheld the summary judgment for Bran-Dan on its trespass-to-try-title claim and its suit to quiet title, because we agree that Bran-Dan waived all issues other than its trespass-to-try-title claim and its suit to quiet title, and because the trial court therefore did not rule on the merits of Bran-Dan's other issues, we need not address Ha's contingent third issue. *See* Tex. R. App. P. 47.1.

### VII. Conclusion

Having overruled Ha's first two issues, which are dispositive of her appeal, we affirm the trial court's order granting in part Bran-Dan's summary-judgment motion, denying Ha's summary-judgment motion in its entirety, and declaring Bran-Dan the rightful owner of the property.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: May 16, 2024